IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1915, AND NOVEMBER
TERM, 1915, IN THE NINETY-NINTH AND ONE
HUNDREDTH YEARS OF THE STATE.

---

### SPICE *v.* ASTRY, ADMINISTRATRIX.

[No. 22,800.  Filed November 16, 1915.]

1. MASTER AND SERVANT.—*Negligence of Servant.*—*Concurring Negligence by Servant of Another.*—*Liability.*—The fact that there is evidence to show negligence on the part of a workman who was employed by a codefendant would not relieve another defendant from liability for injuries resulting in death in the absence of a showing that he was not legally responsible for the acts of his own servant which contributed thereto, but his liability would be that of a joint rather than a sole tortfeasor. p. 4.

2. MASTER AND SERVANT.—*Negligence of Servant.*—*Liability.*—*Scope of Employment.*—Where defendant. contractor's servant, seeing that water which defendant's servants had piped into a tank was threatening to flood the building in which defendant was installing certain water pipes, started a defective pump, which he was not authorized to use, in an attempt to prevent the flooding of the building, which resulted in the pump breaking a pipe conveying ammonia gas, which killed plaintiff's decedent, defendant was liable for the death, since, where a servant is engaged in accomplishing an end within the scope of his employment, and adopts means reasonably and directly intended to that end, which result in injury to another, the master is answerable, even though the means employed were outside the servant's authority and against the express orders of the master. p. 4.

3. APPEAL.—*Review.*—*Harmless Error.*—*Refusal of Instructions.*—The refusal of an instruction, even though properly stating the law applicable to the charge stated in one paragraph of complaint, was harmless, where the jury's answers to interrogatories disclose facts to sustain the verdict on another paragraph to which the instruction was not applicable. p. 5.

4. DEATH.—*Damages.*—*Excessive Verdict.*—Where the evidence showed that plaintiff's decedent was seventy-two years of age and earned from $700 to $800 per year at his trade, that he was a sober and industrious man, well preserved, and in no way incapacitated from labor, a verdict for $3,800 was not excessive. p. 6.

5. EVIDENCE.—*Judicial Notice.*—*Expectancy of Life.*—The court judicially knows that the average man seventy-two years of age has an expectancy, under the standard tables of mortality, of more than seven years. p. 6.

From Allen Circuit Court; *Sol. A. Wood*, Special Judge.

Action by Mary E. Astry, administratrix of the estate of Jonas Astry, deceased, against Robert Spice and others. From a judgment for plaintiff, the defendant named appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Affirmed.*

*Barrett & Morris* and *R. B. Dreibelbiss*, for appellant.

*Harper & Feubler*, for appellee.

SPENCER, C. J.—Appellee, as administratrix of the estate of Jonas Astry, her deceased husband, brought this action to recover damages for his wrongful death. The complaint is in two paragraphs, in each of which it is alleged that on May 18, 1911, appellant and certain of his codefendants were engaged as independent contractors in the work of installing a refrigerating plant and making certain alterations in a building occupied by the defendant, Swift & Company, in the city of Fort Wayne. The first paragraph of complaint alleges that appellant, a plumbing contractor, installed as a part of said plant a certain pump which he negligently failed to provide with an escape or relief valve for its proper operation, or with proper safety guards; that appellant and his servants, with knowledge of such defects, undertook to operate said pump; that by

reason of said defective condition and improper installation by appellant, the belt which operated the pump was thrown off its pulley and caused to strike certain petcocks in the refrigerating machinery, thus breaking parts of the machinery and permitting the escape of ammonia gas into the basement of the building where appellee's decedent was at work as a carpenter; that the fumes of the gas caused his death. The second paragraph of complaint does not allege who installed the pump in question but charges that with knowledge of its defective condition and installation, appellant and his codefendants started the pump without taking proper precautions to prevent an accident and thus caused decedent's death in the manner stated above.

In support of his contention that, under the evidence, the jury improperly returned a verdict against him, appellant relies on the rule that a master is responsible for the acts of his servants only where the latter are acting within the scope of their authority. The evidence in this case shows that appellant's servants, pursuant to an agreement which appellant had with Swift & Company, were engaged in installing certain water pipes connecting the pump in the basement of the Swift building with a tank on the third floor of said building and with a cooling tower on the roof thereof. There is evidence further tending to show that appellant's servants piped water into the tank on the third floor before they placed a discharge or overflow pipe in said tank; that water began to flow onto them from said tank while they were at work and threatened to flood the building, whereupon said servants, with knowledge of the condition of the pump, caused it to be started in an effort to stop the overflow of water and to prevent the threatened damage to the building; that the pump had no relief valve

and became choked soon after the load was placed on it, thus causing the belt to slip from the pulley and catch on parts of the refrigerating machinery. This resulted in the breaking of a line of pipe carrying ammonia gas, which filled the room in which decedent was at work and caused his death.

1. It must be conceded that the evidence also strongly tends to show negligence on the part of a workman who was employed by one of appellant's codefendants, but such fact, if established, would at most make of appellant a joint, rather than a sole tortfeasor, and would not relieve him of the judgment in suit unless it further appears that he is not legally responsible for the acts of his servants which contributed to the accident.

Appellant takes the position that the act of his servant, Buford, in causing the pump to be started, was wholly without authority from appellant, or any of his agents; and was outside the scope of Buford's employment. The evidence on this point is not free from doubt but, in any event, the case is one which falls within the rule thus expressed in *Pittsburgh, etc., R. Co.* v. *Kirk* (1885), 102 Ind. 399, 402, 1 N. E. 849, 52 Am. Rep. 675, "Whether a servant in a given case was acting within the scope of his employment, in pursuance of his line of duty, or, on his own responsibility, in pursuance of his own pleasure or convenience, must usually depend upon the facts in such case. To undertake to lay down a general rule applicable to all cases would not only be difficult, but impossible. But we think this much may be said, where a servant is engaged in accomplishing an end which is within the scope of his employment, and while so engaged adopts means reasonably intended and directed to the end which result in injury to another, the master is answerable for the conse-

quences, regardless of the motives which induced the adoption of the means; and, this, too, even though the means employed were outside of his authority, and against the express orders of the master. * * * Where a servant steps aside from the master's business and does an act not connected with the business, which is hurtful to another, manifestly the master is not liable for such act, for the reason that having left his employer's business, the relation of master and servant did not exist as to the wrongful act; but if the servant continues about the business of the employer, adopts methods which he deems necessary, expedient or convenient, and the methods adopted prove hurtful to others, the master is liable." Thus, in the case at bar, appellant's servants, while engaged in accomplishing an end which was within the scope of their employment, adopted means reasonably intended to prevent damage which threatened to arise from a previous omission on their part. Their acts contributed to the injury of another and, under the above rule, even though the means employed were adopted without authority from appellant, he is liable for the resulting injury. The evidence in this case covers nearly nine hundred pages of record and is in serious conflict on many of the issues presented by the pleadings, but we can not agree that there is an entire failure of evidence on any issue necessary to sustain the verdict of the jury.

Appellant also urges error in the refusal of the trial court to give to the jury instructions Nos. 3 and 9, which he tendered. What we have heretofore said in discussing the evidence is sufficient also to dispose of appellant's contention relative to instruction No. 9. Instruction No. 3 was based on a defense made by appellant that in installing the ammonia tanks and pump his

servants acted under the direction of his codefendants and not pursuant to any contract which he had with Swift & Company for that part of the work. Without passing on the sufficiency of this instruction as a proper statement of law, it is enough to note that error, if any, in its refusal would not warrant a reversal of this judgment. The instruction manifestly has reference to the charge contained in the first paragraph of complaint to the effect that appellant's servants negligently installed the pump and ammonia tanks. The second paragraph does not contain this charge but alleges that appellant's servants acted with knowledge of the conditions surrounding the installation of said machinery. The special findings of the jury which were returned with the general verdict disclose a set of facts sufficient to sustain a recovery based on the second paragraph of complaint alone and the judgment can not, therefore, be reversed because of the trial court's refusal to give instruction No. 3, whether proper or not. *Pittsburgh, etc., R. Co.* v. *Sudhoff* (1910), 173 Ind. 314, 329, 90 N. E. 467.

Finally, it is insisted that the damages assessed by the jury are excessive. The evidence on this issue shows that decedent was seventy-two years of age at the time of his death; that he was regularly earning between seven and eight hundred dollars a year at his trade; that he was a sober and industrious man, remarkably well preserved, and in no way incapacitated for labor. In five years' time he would have earned more than the amount of this verdict, $3,800, and the courts know judicially that the average man of decedent's age has an expectancy, under the standard tables of mortality, of more than seven years. *Pittsburgh, etc., R. Co.* v. *Sudhoff, supra,* 331; *Hay* v. *Meridian Life, etc., Co.* (1915), 57 Ind.

App. 536, 548, 101 N. E. 651.   The evidence in this case is sufficient to justify the jury in assuming that decedent's earning capacity would have continued unimpaired for a number of years but for his wrongful injury and death.   Certainly there is nothing in the verdict which suggests that the jury acted out of prejudice, partiality or corruption, and in the absence of such a showing its judgment on the matter of damages, as on other issues of fact, must stand.

There is no reversible error in the record and the judgment of the trial court is therefore affirmed.

Note.—Reported in 110 N. E. 201.   Liability of master for act of servant not in the course of his employment, see 29 Am. Rep. 640. What is excessive verdict in action for death by wrongful act, see 18 Ann. Cas. 1209.   Liability of master for acts of servant in excess of instruction, see 5 Ann. Cas. 123.   On master's responsibility for the wrongful or negligent act of his servant or agent towards one who has no claim upon the master by reason of a contract incipient or perfected, see 27 L. R. A. 161.   See, also, under (1) 26 Cyc 1092, 1302; (2) 26 Cyc 1534, 1535; (3) 38 Cyc 1817; (4) 13 Cyc 375; (5) 16 Cyc 871.